910 So.2d 635 (2005)
James SMITH a/k/a James Estus Smith, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-CP-02319-COA.
Court of Appeals of Mississippi.
March 1, 2005.
James Smith, appellant, pro se.
Office of the Attorney General, by: John R. Henry, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. James Smith filed a pro se petition for post-conviction collateral relief on May 15, 2003. On September 18, 2003, that petition was dismissed by the trial court. Aggrieved by that denial, Smith has appealed and raises the following issues:
*636 I. Whether his guilty pleas were voluntary.
II. Whether he should have received an evidentiary hearing.
III. Whether he was entitled to a competency hearing prior to pleading guilty.

FACTS
¶ 2. On May 8, 2000, Smith was indicted for capital murder. Smith was represented by appointed counsel. On that same day during the plea hearing, the State moved to amend the indictment as part of a plea agreement, that would reduce the charge from capital murder to murder and robbery. At the guilty plea hearing, the trial judge questioned Smith extensively to determine whether his pleas were knowingly, intelligently, and voluntarily made. The trial judge asked Smith whether he could read and write, to which Smith indicated that he could. The trial judge inquired about Smith's educational level. Smith stated that he finished the eighth grade.
¶ 3. The trial judge explained to Smith that he had a right to a trial by jury and the possible penalties allowable. Smith indicated that he understood this information. The trial judge informed Smith that pleading guilty would waive his right to a jury trial and the other constitutional rights mentioned in paragraph V of his petition to enter a guilty plea, including the right to testify on his own behalf, or not to testify, as he chose. Smith indicated that he understood the waiver of these rights.
¶ 4. The trial judge asked Smith whether he was satisfied with his attorneys' services, to which he responded affirmatively. Upon inquiry by the trial judge, Smith stated that he was not coerced or threatened into pleading guilty. The trial judge asked Smith whether he was "under the influence of any kind of intoxicating liquors, drugs, narcotics, prescription medication." Smith indicated that he was not under the influence of any substance. The trial judge also questioned Smith to determine whether he understood the questions being asked of him, to which he responded affirmatively.
¶ 5. After questioning Smith, the trial judge asked him if he wanted to change his pleas and proceed with a jury trial. Smith indicated that he did not want to change his pleas. The trial judge asked Smith did he commit the crimes charged. Smith admitted that he robbed the victim, but stated that he did not kill the victim. Smith claimed that someone named Diane McCraw actually struck and killed the victim with a brick.
¶ 6. On May 15, 2000, the trial judge sentenced Smith on the murder charge to a term of life imprisonment in the custody of the Mississippi Department of Corrections. On the robbery charge, Smith was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections. The sentences were to run consecutively. The trial judge ordered that Smith (1) obtain his GED, (2) get tested and evaluated for any drug or alcohol problems at the Mississippi Department of Corrections, and (3) receive a psychiatric examination.
¶ 7. At the sentencing hearing, Smith had attempted to withdraw his guilty pleas. He claimed that he was under the influence of marijuana when he previously entered the guilty pleas.
¶ 8. On May 15, 2003, Smith filed a motion for post-conviction collateral relief. That motion was denied pursuant to Mississippi Code Annotated Section 99-39-11(2) (Rev.2000).

STANDARD OF REVIEW
¶ 9. "When reviewing a lower court's decision to deny a petition for post-conviction *637 relief, this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, where questions of law are raised, the applicable standard of review is de novo." Hamlin v. State, 853 So.2d 841(¶ 4) (Miss.Ct.App.2003).

ISSUES AND ANALYSIS

I.

Whether Smith's guilty pleas were voluntary.
¶ 10. Smith contends that his guilty pleas were not intelligently and voluntarily made. He maintains that the trial judge failed to determine whether his pleas were voluntarily and intelligently made. The entry of guilty pleas is addressed by Rule 8.04 of the Uniform Circuit and County Court Rules.
¶ 11. Rule 8.04(A)(1), (2), (3), and (4) of the Uniform Circuit and County Court Rules states:
1. A defendant may plead not guilty, or guilty, or with the permission of the court, nolo contendere.
2. Entry of Guilty Plea. A person who is charged with commission of a criminal offense in county or circuit court, and is represented by an attorney may, at his/ her own election, appear before the court at any time the judge may fix, and be arraigned and enter a plea of guilty to the offense charged, and may be sentenced by the court at that time or some future time appointed by the court.
3. Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.
4. Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:
a. That the accused is competent to understand the nature of the charge;
b. That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law;
c. That the accused understands that by pleading guilty (s)he waives his/her constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination; if the accused is not represented by an attorney, that (s)he is aware of his/her right to an attorney at every stage of the proceeding and that one will be appointed to represent him/ her if (s)he is indigent.
¶ 12. The transcript of the plea hearing reflects that the trial judge questioned Smith extensively to determine whether his pleas were knowingly, voluntarily, and intelligently made. The trial judge inquired as to whether Smith fully understood the questions asked, whether he was able to read and write, and whether he was under the influence of any substance. Smith responded to the questions in such a manner that the trial judge determined that his pleas were intelligently made. Smith also executed a petition to enter a guilty plea and acknowledged that his attorneys conferred with him regarding the information contained in the petition.
¶ 13. At the plea hearing, the trial judge asked Smith the following:
Q. All right. Now, here today are you under the influence of any kind of intoxicating *638 liquors, drugs, narcotics, prescription medication or anything like that?
A. No, sir.
Q. All right. So you fully understand what we're talking about?
A. Yes, sir.
Q. You fully understand where you are in Pascagoula, Jackson County, Mississippi?
A. Yes, sir.
Q. And you fully understand the whole nature of this proceeding and how it's going to go ahead if you want it to go ahead and plead not guilty?
A. Do what now?
Q. The trial. Do you understand how the trial works?
A. Yes, sir.
Q. All right. And you understand you've got every right to go to trial?
A. Yes, sir.
¶ 14. Smith now maintains that the trial court's acceptance of his guilty pleas was invalid. At the sentencing hearing, Smith attempted to withdraw his guilty pleas. He indicated that he was under the influence of drugs on the morning that he entered the guilty pleas.
¶ 15. After Smith entered his guilty pleas, the trial judge indicated that he would review a pre-sentence investigation report prior to giving the sentence on the robbery charge. The following colloquy occurred between the trial judge and Smith:
Q. But during the week that I'm getting all that information and making these decisions, if you were to decide to change your plea, I'm not going to give you a chance to change your plea.
A. Yes, sir.
Q. This is your last chance. All right. And we've got the jury here and, you know, all defenses right ready to go now. So what we're up to is that if you want to change your mind about this plea, this is the time to do it. Right now is the time to say, look, I want to withdraw these pleas, I'm ready for y'all to bring the jury back in and let's go to trial. Now, do you want to change those pleas back to not guilty and go ahead, go to trial on the charge of capital murder that you've been indicted on?
A. No, sir.
Q. Now, have each one of those pleas been your decision?
A. Yes, sir.
Q. And have each one of these pleas been entered by you freely and voluntarily?
A. Yes, sir.
¶ 16. Smith also claims that his guilty pleas were unlawful because "he did not admit in open court that he was guilty." He claims that because he did not utter the words "I am guilty," at the plea hearing, that his pleas were not valid. Pursuant to Mississippi Code Annotated Section 99-19-3(1) (Rev.2000), (a) a person shall not be convicted of a criminal offense that he has been indicted for unless, (b) the person confesses his guilt in open court, (c) admits the truth of the charge against him by his plea, or (d) by jury verdict. The statute also provides that a person charged with an offense shall not be punished unless legally convicted in a court having jurisdiction over the cause and over the person.
¶ 17. While Smith did not specifically state at the plea hearing that he killed the victim, the State indicated that Smith had given two statements, one oral and one written, wherein he confessed to killing the victim. At the hearing, Smith admitted that he committed robbery.
¶ 18. In reviewing the record regarding the above information, this Court notes *639 that the trial court is entitled to place great emphasis upon statements made under oath in open court during plea proceedings and sentencing. Brasington v. State, 760 So.2d 18(¶ 32) (Miss.Ct.App. 1999). Having viewed the record before this Court, we find this issue is without merit.

II.

Whether Smith was entitled to an evidentiary hearing.
¶ 19. Smith claims that he was entitled to an evidentiary hearing because he was misinformed regarding his sentence. Smith alleges that prior to pleading guilty, his attorney "erroneously informed him that the sentence of life imprisonment for murder would be with parole." Smith contends that he was induced to plead guilty based on this erroneous information.
¶ 20. Pursuant to Mississippi Code Annotated Section 99-39-19(1) (Rev.1994) of the Post-Conviction Collateral Relief Act, the trial judge has authority to review the record and determine whether an evidentiary hearing is required.
¶ 21. "The purpose of an evidentiary hearing is for the court to receive evidence in order to make findings of fact." Rowland v. Britt, 867 So.2d 260(¶ 9) (Miss. Ct.App.2003). In Milam v. State, 578 So.2d 272, 273 (Miss.1991), the supreme court held that if there are not any disputed or disputable facts, and the question is merely the interpretation of statutes, no evidentiary hearing is required. Smith alleges that a disputed fact exists because he was misinformed about parole eligibility.
¶ 22. Smith cites Weaver v. State, 785 So.2d 1085 (¶ 9) (Miss.Ct.App. 2001) where the defendant relied on the holding in Robinson v. State, 585 So.2d 757, 759 (Miss. 1991) which stated, "The holding in Robinson labeled the initial sentence as clearly erroneous and reasoned that based on the improper inducement that he was eligible for a suspended sentence . . ., he is therefore permitted to withdraw his guilty plea and he must be allowed to enter a new plea and offered the opportunity of a new trial."
¶ 23. The trial judge informed Smith of the following:
Q. Now, you understand the three possible penalties are that you should suffer the death penalty or you should suffer life imprisonment without parole or life imprisonment if the verdict were capital murder. Do you understand that?
...
A. Yes, sir.
The trial judge also indicated the penalty for pleading guilty to murder:
Q. Now, James, do you understand that on murder, if you plead guilty to murder, there's not but one sentence I can impose, and that's life imprisonment in the custody of the Mississippi Department of Corrections?
A. Yes, sir.
¶ 24. Based on the record, this Court finds that this issue is lacking in merit.

III.

Whether he was entitled to a competency hearing.
¶ 25. Smith now argues that he was entitled to a competency hearing prior to the trial court's acceptance of his guilty pleas. He claims that he was not competent to plead guilty. However, the record does not indicate that the issue of Smith's lack of competence was brought to the court's attention during the guilty plea hearing, nor does the record suggest any reason to question Smith's competence.
*640 ¶ 26. The trial judge questioned Smith extensively to determine whether he could fully appreciate the proceedings at hand. Addkison v. State, 608 So.2d 304, 310 (Miss.1992). Smith responded to the trial judge's questions. However, at the sentencing hearing, Smith indicated that he wanted to change his pleas. He claimed that he was "high on drugs at that time." The trial judge reminded Smith that he had been given an opportunity to change his pleas previously and that he observed Smith at the hearing. The trial judge indicated that Smith did not appear to be high on drugs at the time. During sentencing, the trial judge ordered a psychiatric examination.
¶ 27. Pursuant to Rule 9.06 of the Uniform Circuit and County Court Rules, a trial judge should order a competency hearing under the following circumstances: "If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination....After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial." In his order filed September 18, 2003, the trial judge stated that a report dated September 2, 1998, by Jean Hawks, a clinical psychologist, reflected that Smith "does appear to have the mental faculties to work with his attorney on these issues." The trial judge indicated that Smith had been fully examined by the court at the time of his guilty plea.
¶ 28. Having reviewed the record, this Court cannot say that the trial court erred in denying a competency hearing. The issue is without merit.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY DISMISSING THE PETITION FOR POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.